**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COHO LICENSING LLC,

        Plaintiff,

v.

GLAM MEDIA, INC.,

        Defendant.

No. C 14-01576 JSW
No. C 14-02128 JSW
No. C 14-01578 JSW
No. C 14-02127 JSW
No. C 14-02718 JSW
No. C 14-02132 JSW

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, GRANTING PLAINTIFF LEAVE TO FILE SUR-REPLY, AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Now before the Court is the motion for judgment on the pleadings filed by Defendant AOL, Inc. ("AOL")[1]  Having carefully reviewed the parties' papers, relevant legal authority, and the record in this case, the Court hereby GRANTS AOL's motion for judgment on the pleadings. Having reviewed the entire record as presented, the Court GRANTS Plaintiff Coho Licensing Corp. ("Coho")'s administrative motion to file a sur-reply.  As it is rendered moot by this Court's decision on the motion for judgment on the pleadings, the Court DENIES Plaintiff's motion for leave to file an amended complaint.

---

[1]    Defendant AOL filed this motion in conjunction with LinkedIn Corporation in related cases before this Court.  The cases pending against LinkedIn Corporation have since been dismissed without prejudice by agreement of the parties. (*See* Docket No. 96 in Case No. C 14-01576 JSW; Docket No. 66 in Case No. C 14-02131 JSW.)  Defendants Glam Media Inc. and Twitter Inc., appearing in related cases, joined the motion for judgment on the pleadings.  (*See* Docket No. 91 in Case No. C 14-01576 JSW; Docket No. 57 in Case No. C 14-02132 JSW.)  Defendant Rovi Corporation did not file a joinder.

United States District Court

For the Northern District of California

**BACKGROUND**

AOL moves for judgment on the pleadings on the basis that the Plaintiff's patent infringement claims must fail as a matter of law because the three asserted patents, United States Patent Nos. 8,024,395, 8,166,096 and 8,667,065, are invalid under 35 U.S.C. section 101 ("Section 101") for lack of patent-eligible subject matter.  Coho, as the owner by assignment of the patents-in-suit, originally filed these related actions in September 2013 asserting infringement by Defendants of the asserted patents.

On May 16, 2014 and June 17, 2014, AOL filed petitions for *Inter Partes Review* ("IPR") challenging the validity of the claims in the patents-in-suit by asserting that the claims were taught by prior art references.  (Joint Motion to Inform Status of *Inter Partes Review* Petition, Docket. No. 70 at 2.)  On September 17, 2014, this Court granted the Defendants' motion to stay this matter pending decision by the Patent and Trial Appeal Board ("PTAB").  (*Id.*)  On November 20, 2014, a divided panel of the PTAB denied AOL's petition for IPR for each of the asserted patents.  (*Id.*)  On December 19, 2014, AOL filed a Request for Rehearing by an Expanded Panel pursuant to 37 C.F.R. Section 42.710(C)-(D) which was denied on March 24, 2015.  (*Id.*)

In November 2014, the PTAB concluded that AOL had failed to demonstrate a reasonable likelihood of prevailing on challenging the claims and it declined to institute *inter partes* review. (*See* Declaration of Stefanie T. Scott, Ex. A at 1.)  Specifically, the PTAB determined that it remained unpersuaded that AOL had "demonstrated sufficiently that [prior art] Spawn discloses the transfer and allocating limitations."  (*Id.* at 6.)  The PTAB concluded that AOL had not shown how this specific prior art disclosed the subtasks of transferring and allocating a task to another computer. On this basis, the PTAB denied institution of *inter partes* review.  (*See id.* at 6-7, 11.)

The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A.    Applicable Legal Standards.**

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) challenges the legal sufficiency of the claims asserted in the complaint.  A Rule 12(c) motion is "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

United States District Court

For the Northern District of California

1   *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal 2008).  Judgment on the

2   pleadings should not be entered when a complaint does not plead "enough facts to state a claim to

3   relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

4   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a

5   reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556

6   U.S. 662, 678 (2009).  "For purposes of the motion, the allegations of the non-moving party must be

7   accepted as true . . .  Judgment on the pleadings is proper when the moving party clearly establishes

8   on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled

9   to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d

10  1542, 1550 (9th Cir. 1990).  However, "[t]he court need not . . . accept as true allegations that

11  contradict matters properly subject to judicial notice . . . ."  *Sprewell v. Golden State Warriors*, 266

12  F. 3d 979, 988 (9th Cir. 2001).

13          To state a claim for patent infringement, "a patentee need only plead facts sufficient to place

14  the alleged infringer on notice.  The requirement ensures that the accused infringer has sufficient

15  knowledge of the facts alleged to enable it to answer the complaint and defend itself."

16  *Phonometrics, Inc. v. Hospitality Franchise System, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).

17  **B.      Patent Eligibility.**

18          **1.      Judgment on the Pleadings is Not Premature.**

19          AOL asserts that the patents-in-suit fail to claim patent-eligible subject matter under 35

20  U.S.C. Section 101 ("Section 101") and pursuant to the Supreme Court's decision in *Alice Corp.*

21  *Pty. Ltd. v. CLS Bank Int'l*, --- U.S. ---, 134 S. Ct. 2347 (2014) ("*Alice*").  Whether a claim recites

22  patent-eligible subject matter under Section 101 is a question of law.  *In re Roslin Inst. (Edinburgh),*

23  750 F.3d 1333, 1335 (Fed. Cir. 2014).  There are many courts that have considered Section 101

24  eligibility at the motion to dismiss stage, prior to conducting a claims construction.  *See, e.g., OIP*

25  *Technologies v. Amazon,com, Inc.*, 2012 WL 3985118, at \*5 (N.D. Cal. Sept. 11, 2012) (Chen, J.)

26  (citing other cases).  "Where, as here, the basic character of the claimed subject matter is readily

27  ascertainable from the face of the patent, the Court finds that it may determine patentability at the

28  motion to dismiss stage."  *Internet Patents Corp. v. The Gen. Auto. Ins. Servs., Inc.*, 29 F. Supp. 3d

United States District Court

For the Northern District of California

1   1264, 1268 (N.D. Cal. 2013) (White, J.), *aff'd Internet Patent Corp. v. Active Network, Inc.*, 790

2   F.3d 1343, 1344 (Fed. Cir. 2015). "Where the court has a 'full understanding of the basic character

3   of the claimed subject matter,' the question of patent eligibility may properly be resolved on the

4   pleadings." *Pabst Licensing GmbH & Co. KG v. Xilinx Inc.*, --- F. Supp. 3d ---, 2016 WL 3196657,

5   at *7 (N.D. Cal. 2016 (Koh, J.) (quoting *Content Extraction & Transmission LLC v. Wells Fargo*

6   *Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014)).

7              **2.       Principles of Patent Eligibility and Abstractness.**

8              Under Section 101, the scope of patentable subject matter includes "any new and useful

9   process, machine, manufacture, or composition of matter, or any new and useful improvement

10  thereof." Notwithstanding the broad scope of Section 101, there are three important and judicially-

11  created exceptions to patentability: "laws of nature, physical phenomena, and abstract ideas."

12  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980); *see also Ass'n for Molecular Pathology v.*

13  *Myriad Genetics, Inc.*, 569 U.S. ---, 133 S. Ct. 2107, 2116 (2013). These principles are not patent-

14  eligible because "they are the basic tools of scientific and technological work," which are "free to all

15  men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, ---

16  U.S. ---, 132 S. Ct. 1289, 1293 (2012) (citations omitted). "'[M]onopolization of those tools through

17  the grant of a patent might tend to impede innovation more than it would tend to promote it,"

18  thereby thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354 (citing *Mayo*, 132

19  S. Ct. at 1293).

20             Not all inventions involving an abstract concept are barred from patentability, however. The

21  Supreme Court in *Alice* recently affirmed the approach set out in *Mayo* as the test for determining

22  the patent eligibility of an invention involving patent-ineligible subject matter. *Id.* at 2355-59. The

23  analysis, generally known as the *Alice* framework, follows a two-step analysis for distinguishing

24  patents that claim laws of nature, natural phenomenon, and abstract ideas from those that claim

25  patent-eligible applications of those concepts. First, courts must determine whether the claims at

26  issue are directed to a patent-ineligible concept, such as an abstract idea. *Alice*, 134 S. Ct. at 2355;

27  *Mayo*, 132 S. Ct. at 1296-97. If the claims are not directed to an abstract or otherwise patent-

28  ineligible idea, the claims are considered patentable and the inquiry ends. *Id.* If, however, the court

4

United States District Court

For the Northern District of California

1   finds the claims are in fact directed to ineligible or abstract ideas, the court must consider the

2   elements of each claim both individually and as an ordered combination to determine whether the

3   additional elements transform the nature of the claim into a patent-eligible claim. *See Alice*, 134 S.

4   Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1297, 1298).   Step two of the process involves the "search for

5   an 'inventive concept' – *i.e.*, an element or combination of elements that is 'sufficient to ensure that

6   the patent in practice amounts to significantly more than a patent upon the [ineligible concept]

7   itself.'"  *Id.* (citing *Mayo*, 132 S. Ct. at 1294).   Therefore, "application[s]" of an abstract concept "to

8   a new and useful end" remain eligible for patent protection.  *Gottschalk v. Benson*, 409 U.S. 63, 67

9   (1972).

10        Although not dispositive of the issue, many courts use the "machine-or-transformation" test

11   as "a useful and important clue" to assess whether some claim is patent-eligible.  *Bilski v. Kappos*,

12   561 U.S. 593, 130 S. Ct. 3218,  3226 (2010).   Under this test, a "claimed process is surely patent-

13   eligible under § 101 if: (1) tied to a particular machine or apparatus; or (2) it transforms a particular

14   article into a different state or thing."  *Id.* at 3224.   Beyond the machine-or-transformation test, a

15   reviewing court is obligated to "hew closely to established precedents in this area to determine

16   whether an invention falls within one of the exceptions to § 101's broad eligibility."  *OIP*

17   *Technologies*, 2012 WL 3985118, at *5 (citing *Bilski*, 130 S. Ct. at 3231).   Also, after the Supreme

18   Court's decision in *Alice*, "there can remain no doubt: recitation of generic computer limitations

19   does not make an otherwise ineligible claim patent-eligible."  *DDR Holding, LLC v. Hotels.com, LP*,

20   773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing *Alice*, 134 S. Ct. at 2358).   While claims that "broadly

21   and generally claim 'use of the Internet' to perform an abstract business practice" may not be

22   patentable, claiming an "inventive concept for resolving [a] particular Internet-centric problem,

23   render[s] the claims patent-eligible."  *Id.* at 1258, 1259.

24        Section 101 "does not permit a court to reject subject matter categorically because it finds

25   that a claim is not worthy of a patent."  *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 868

26   (Fed. Cir. 2010).   The reason for the exceptions to eligibility rest on the presumption undergirding

27   the patent system, which "represents a carefully crafted bargain that encourages both the creation

28   and the public disclosures of new and useful advances in technology, in return for an exclusive

**United States District Court**
For the Northern District of California

1    monopoly for a limited period of time." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d

2    1300, 1324 (Fed. Cir. 2012) (quoting *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998)).  "A

3    patentee does not uphold his end of this 'bargain' if he seeks broad monopoly rights over a basic

4    concept, fundamental principle, or natural law without a concomitant contribution to the existing

5    body of scientific and technological knowledge."  *Id.*  Monopolization of the tools of abstract ideas

6    through the grant of a patent might tend to impede innovation more than it would tend to promote it,

7    thereby thwarting the primary objective of the patent laws.  *Alice*, 134 S. Ct. at 2354.  At the same

8    time, however, courts must "tread carefully in construing this exclusionary principle 'lest it swallow

9    all of patent law.'" *Appistry, Inc. v. Amazon.com, Inc. ("Appistry I")*, 2015 WL 4210890, at *1

10   (W.D. Wash. July 9, 2015) (Pechman, J.) (citing *Alice*, 134 S. Ct. at 2354).

11           **2.       Application of Section 101 to the Patents-in-Suit.**

12                   **a.       Identification of Claims Directed to an Abstract Idea.**

13           Although abstract ideas are not patent-eligible subject matter, neither the Supreme Court nor

14   the Federal Circuit has "established a definitive rule to determine what constitutes an 'abstract idea'

15   sufficient to satisfy the first step of the *Mayo/Alice* inquiry."  *Enfish, LLC v. Microsoft Corp.*, 822

16   F.3d 1327, 1334 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2357 (noting that the Court "need not

17   labor to delimit the precise contours of the 'abstract ideas' category in this case")).  Rather, instead

18   of setting forth a bright line test separating abstract ideas from concepts that are sufficiently concrete

19   so as to require no further inquiry under the first step of the *Alice* framework, courts are tasked with

20   making the evaluation whether any particular claims are directed to a patent-ineligible abstract idea

21   by "compar[ing] claims at issue to those already found to be directed to an abstract idea in previous

22   cases." *Pabst*, 2016 WL 3196657, at *9 (citing *Enfish*, 822 F.3d at 1334).  In the context of

23   computer-implemented inventions, "courts have considered whether the claims purport to 'improve

24   the functioning of the computer itself,' which may suggest that the claims are not abstract, or instead

25   whether 'computers are invoked merely as a tool' to carry out an abstract process."  *Id*. at *10 (citing

26   *Alice*, 134 S. Ct. at 2359; *Enfish*, 822 F.3d at 1334).  In addition, courts tasked with the analysis of

27   the first step evaluation of abstractness may consider "whether the claims are, in essence, directed to

28   a mental process or a process that could be done with pen and paper."  *Id.* (citations omitted).

1   "Another helpful way of assessing whether the claims of the patent are directed to an abstract idea is

2   to consider if all the steps of the claim could be performed by human beings in a non-computerized

3   'brick and mortar' context." *Intellectual Ventures I LLC v. Symantec Corp.*, 100 F. Supp. 3d 371,

4   383 (D. Del. 2015) (citations omitted). "In distilling the purpose of a claim, the Court is careful not

5   to express the claim's fundamental concept at an unduly 'high level of abstraction . . . untethered

6   from the language of the claims,' but rather at a level consonant with the level of generality or

7   abstraction expressed in the claims themselves." *Pabst*, 2016 WL 3196657, at *12 (citations

8   omitted).

9         In this matter, the Court finds that the each of the shared specifications of the asserted patents

10   is directed to the concept of dividing and subdividing tasks for distributed processing. (*See* '395

11   Patent at 2:63-3:3; Abstract.) The patents-in-suit attempt to claim a simple recitation of abstract

12   steps for dividing and assigning tasks among computers.[2]

13         Claim 1 of the '395 Patent reads as follows:

14         A computer-implemented method for distributed processing comprising:
           dividing a task into a plurality of task portions,
15         wherein said task comprises at least one of divisible data or divisible executable
           instruction sets;
16         an allocating computer transferring at least one said task portion to a sub-allocating
           computer;
17         said sub-allocating computer receiving said task portion;
           said sub-allocating computer dividing said task portion into a plurality of subtask
18         portions;
           said sub-allocating computer transferring at least one said subtask portion to an
19         allocated computer,
           said allocated computer receiving said subtask portion,
20         whereby producing at least one result;
           said allocating computer transferring said result to a pre-designated results computer;
21         said results computer receiving and storing said result; and
           such that all foregoing transferring occurs by network connection.
22
     (*See* '395 Patent at 5:63-6:16.)
23

24

25

26         [2]   The Court also finds that the other claims of the patents-in-suit recite the same abstract
     concept of divide-and-conquer using the same basic set of steps. *See, e.g., Content Extraction*, 776 F.3d
27   at 1348 (holding that a district court need not expressly address each asserted claim where the court
     concludes that particular claims are representative because all of the claims are "substantially similar
28   and linked to the same abstract idea.").

United States District Court

For the Northern District of California

1    The Abstract describes the claimed system:

2    Described is a system and methods for multiple tier distribution of task portions by
     a first computer and a task portion transferred to second participatory computer on
3    the network, whereupon an allocated task portion is again portioned by the second
     computer into subtask portions, and a subtask portion transferred by the second
4    computer to a third participatory computer on the network, whereby distributed
     processing transpired, and results collated as required.
5

6    (*See* '395 Patent at Abstract.)  The specifications set out the process by way of example:

7    One example is a divisable and distributable chunk of data requiring a single
     processing, . . . , split into portions so that the various participatory computers can
8    process the data portions.  The task data is shown portioned into equal quarter task
     portions.  A task portion has been further split into subtask portions.
9

10   (*See id*. at 2:63:3-3.)

11   The Court finds that the asserted claims are directed to a basic concept of divide-and-

12   conquer.  The patents-in-suit recite the abstract idea of distributed processing – merely splitting up a

13   job into smaller pieces to be completed by multiple participating computers in the hierarchy.  It is a

14   relatively simple and abstract idea, one which can be carried out using a pen and paper.  The Court

15   finds persuasive the reasoning in a case adjudicating a similar abstract idea of networked computers

16   communicating over a hierarchical structure: "The patents-in-suit recite the abstract idea of

17   distributed processing akin to the military's command and control system, a longstanding and

18   intuitive practice used by many large hierarchical organizations that value speed, efficiency,

19   reliability, and accountability.  The patents describe systems and methods of using a network of

20   multiple actors to efficiently and reliably process information and/or complete a task by breaking

21   down the job into smaller pieces, each handled by a different actor organized within an internal

22   hierarchy." *Appistry I*, 2015 WL 4210890, at *2.  Similarly, the Court here finds that the claims of

23   the patents-in-issue here are directed to the abstract idea of distributed processing.

24                  **b.      Evaluation of Abstract Claim for a Limiting Inventive Concept.**

25   Step two of the *Mayo/Alice* analysis requires evaluation of abstract claims for a limiting

26   inventive concept.  "A claim drawn to an abstract idea is not necessarily invalid if the claim's

27   limitations – considered individually or as an ordered combination – serve to "transform the claims

28   into a patent-eligible application." *Pabst*, 2016 WL 3196657, at *11 (citing *Content Abstraction*, 776

8

United States District Court

For the Northern District of California

1    F.3d at 1348).  This second step requires that the Court evaluate whether the claim contains "an

2    element or combination of elements that ensures that the patent in practice amounts to significantly

3    more than a patent upon the abstract idea itself." *Id.* (citing *Alice*, 134 S. Ct. at 2355.)  Simply

4    because a patent invokes the use of a computer does not transform an abstract idea into a patent-

5    eligible invention: "[f]or the role of a computer in a computer-implemented invention to be deemed

6    meaningful in the context of this analysis, it must involve more than the performance of 'well-

7    understood, routine, [and] conventional activities previously known to the industry." *Content*

8    *Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 134 S. Ct. at 2359).  It is "well-settled that mere

9    recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise

10   abstract idea" where those components simply perform their "well-understood, routine,

11   conventional" functions.  *In re TLI Communications LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir.

12   2016).

13        Here, the Court finds that the subject patents lack any inventive concept that transforms the

14   abstract idea of divide-and-conquer distributive computer processing into patentable subject matter.

15   The patents provide no more specific or detailed ideas about the mechanism or application to

16   practice of this fundamentally abstract idea.  Upon thorough examination of the claims and the

17   specifications of the patents-at-issue, the Court can discern no inventive concept that transforms the

18   abstract idea of divide and conquer in the area of distributive computing into a patent-eligible

19   application of that abstract idea.  An "inventive concept must be significantly more than the abstract

20   idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a

21   computer." *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, --- F.3d --- , 2016 WL

22   3514158, at *6 (Fed. Cir. 2016).  Here, the patents do not claim any particular process or concept,

23   but instead rely on generic hardware components to perform conventional activities commonly

24   understood.  *See Content Extraction*, 776 F.3d at 1348.  The claims are not directed to a unique

25   solution to a process specific to computers.  The claims are not tied to any particular machine and do

26   not transform any specific idea or article into a different thing, thereby creating an inventive concept

27   to remove it from the realm of the abstract idea.  The claims simply recite the use of generic features

28   of a distributive process as well as routine functions, such as transferring and allocating tasks and

9

United States District Court

For the Northern District of California

1   subtasks, to implement the underlying distributive processing idea.  Lastly, the fact that the basic

2   steps using generic computer technology are merely repeated does not create an ordered

3   combination that renders the idea inventive.  *See contra Rapid Litigation Mgmt. Ltd. v. CellzDirect,*

4   *Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016) (holding that "[r]epeating a step that the art taught should

5   be performed only once can hardly be considered routine or conventional.")

6           In response, Plaintiff contends that there remains a dispute of fact regarding whether the

7   concepts in the claims for transferring and allocating designate inventive steps because those steps

8   were not previously disclosed in the prior art.  In this regard, Plaintiff contends that the PTAB found

9   that the claimed steps for transferring and allocating limitations were not present specifically in the

10  Spawn prior art.  Premised upon this finding, Plaintiff contends there is a dispute of fact precluding

11  entry of judgment as a matter of law pursuant to Section 101 before this Court.  Plaintiff argues that,

12  given that the PTO and the PTAB found the limitations in the patents were absent from the prior art,

13  Defendants "cannot prove that no reasonable fact finder could conclude that the claimed architecture

14  (taken as a whole) was not 'conventional' and 'routine' activity."  (Opp. Br. at 10.)  Plaintiff

15  contends that these "limitations cannot be considered widely accepted as conventional or routine

16  because nothing in the record before the Court demonstrates they have been practices prior to the

17  claimed invention."  (Sur-Reply at 2.)

18          First, the PTAB's decision not to institute an *inter partes* review has no preclusive effect for

19  any finding of fact before this Court.  *See SunPower Corp. v. PanelClaw, Inc.*, 2016 WL 1293479, at

20  *4 n.50 (D. Del. April 1, 2016) ("The PTAB's decision not to institute an IPR is not the type of

21  adjudication that leads to issue preclusion.").  Second, the scope of the record before the PTAB and

22  the question of novelty in distinguishing specific prior art stands in distinct contrast to the current

23  state of the record and the question presented before this Court concerning patent eligibility.  *See,*

24  *e.g., Interdigital Communications v. Nokia Corp.*, 2015 WL 8104167, at *1 (D. Del. Sept. 19, 2014)

25  (holding that because the merits are assessed with "less than a full record and with less than a full

26  adversarial proceeding . . . the PTAB's actions in relation to the [patent] are of marginal relevance,"

27  and excluding introduction of those findings under Federal Rule of Evidence 403); *see also*

28  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) (affirming

10

United States District Court
For the Northern District of California

1  invalidation of patent as abstract where a jury had previously found the patent was not anticipated or

2  obvious based upon the proffered prior art).  The scope of the prior art evaluation and the finding by

3  the PTAB on novelty as it related to specific prior art simply do not address or resolve the question

4  of abstractness pending before this Court.  *See Pabst*, 2016 WL 3196657, at \*20 n. 11 (holding that

5  "[n]either a Section 101 challenge generally nor the more specific question articulated by the U.S.

6  Supreme Court as the second step of the *Alice* framework was before the PTAB, however, which

7  ruled only that the particular prior art cited in [Defendant's] petition failed to show a reasonable

8  likelihood that [Plaintiff] would prevail in establishing unpatentability under 35 U.S.C. § 103

9  (relating to obviousness).").  Although the scope of the PTAB's review was limited to the specific

10  prior art raised before that tribunal, even if the PTAB had a full record and had made a

11  determination on the merits concerning a finding of novelty of the patents-at-issue, that ruling would

12  certainly not bind nor necessarily inform this Court's determination of patent eligibility.

13  Accordingly, the Court is not persuaded by Plaintiff's contention that the finding by the PTAB

14  precludes entry of judgment.

15                                         **CONCLUSION**

16        The Court finds that the claims are directed to an abstract idea.  *See Alice*, 134 S. Ct. at 2355.

17  Further, the Court finds that the patents-in-suit lack any inventive concept that transforms that

18  abstract idea into patentable subject matter.  Thus, the claimed system is patent-ineligible under

19  Section 101.  Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings,

20  GRANTS Plaintiff's administrative motion to file a sur-reply, and DENIES as moot Plaintiff's

21  motion for leave to file an amended complaint.  A separate judgment shall issue and the Clerk shall

22  close all related matters.

23        **IT IS SO ORDERED.**

24  Dated:   January 23, 2017

                                        _____
25                                      JEFFREY S. WHITE
                                        UNITED STATES DISTRICT JUDGE

26

27

28

11